Thank you. Good morning, and may it please the court. I'm Katherine Carroll, appearing by appointment of the court as pro bono amicus curiae counsel in support of the petitioners. With me at council table is Mr. Joseph Baccio, who is the petitioner's private counsel. How are you allocating your time? We've agreed this morning that I'll be addressing the court for the full ten minutes. The full ten minutes. Very good. Of course, Mr. Baccio is available should you have any questions specifically directed to him. And with the court's permission, I'd also like to reserve two minutes of my time. You may do so. Just watch the clock. Thank you. Your Honors, the immigration judge in this case committed two legal errors in concluding that the Mercados had not demonstrated the hardship necessary to qualify for cancellation of removal. And either of those errors requires a remand to the agency for further consideration of the hardship question. First, on the issue I'd like to focus on principally this morning, the immigration judge's conclusion that Mr. Mercado's elderly parents, who are in poor health and require special care around the clock, would not suffer exceptional hardship upon petitioner's removal, rested on an erroneous interpretation of the immigration statute. I think we understand your contention, counsel, but I've got a serious problem in the fact that you failed to cite Martinez-Rosas. Doesn't that foreclose your entire case? I don't think so. First of all, why didn't you cite it? I'm afraid I can't speak to the citations in the brief. I'm actually new to the case since the time that the case has been handled. Did you have a chance to research the state of the law in the Ninth Circuit on your point? I did. And I understand the Court's concerns under Martinez-Rosas and Romero-Torres and with the claims about the abuse of discretion and jurisdiction over that. I do understand the Court's concerns with that. That's a backup argument that we have in our brief, which the Court does not need to address. But you never cited it in your brief. I believe that that is true. I think that we did. Well, how is it a backup argument in your brief if you never cited it? Oh, I assume that the basis of your question was that we do argue in the brief about the jurisdictional bar, which this Court addressed in Martinez-Rosas. And my answer to Your Honor's question is simply that I do understand the concerns with that argument in particular. Well, then, why don't you go to the merits? Why shouldn't that be an absolute bar to your contention? I think that the argument on that issue goes to the special nature of the family unity issue. But I do wish to address the legal errors separate and apart from that due process argument because I think it's important. I hear you struggling with, and you're making a valiant argument here, but what I hear you trying to do is to do an end run around Martinez-Rosas and to recharacterize the immigration judge's discretionary determination that there was no extreme and unusual hardship to try and fit it into some sort of a due process theory that the error was legal and not factual. I do completely understand the concerns behind your question. What I'm actually trying to do in the limited time that we have is to focus on the discrete statutory and legal errors over which the government, at page 23 of its brief, agrees that the Court does have jurisdiction. And that in particular is the argument about the immigration judge's reliance on the family sponsor provision of the immigration statute. But if Martinez-Rosas controls this case, there is no jurisdiction. That's where I'm stuck at the moment. I need you to help me get off that sandbar. I'm happy to get you off that sandbar. I think we need to separate the legal argument about the family sponsor provision, which is within this Court's jurisdiction under 1252A2D, because it raises a question of law very similar to the question that was at issue, for instance, in Cabreras-Alvarez, where there was a question of statutory interpretation presented in the context of a cancellation case. And the Court agreed that as to that discrete issue, there is jurisdiction. And I'd really like to get into the merits of just that particular legal issue there, which doesn't have anything to do with the Martinez-Rosas and the substantive due process issues. Is this the requirement that they provide 125 percent? Exactly. That's the issue that I think warrants the Court's attention, because in particular, if the Court were to agree that the immigration judge erred in that regard, it wouldn't even have to get into all of the other issues. Erred in what regard? Finding that the record did not support the 125 percent finding? No. I think the best way to see what the error is, is just to walk through the immigration judge's analysis of hardship with respect to the parents. And I'd refer the Court to pages 7 and 8 of the oral decision, which is at 99 to 100, of the administrative record. The immigration judge concluded that there would be no exceptional hardship to the parents, principally because he thought there were other siblings. Why isn't that non-reviewable? I'm going to get to that, Your Honor. Exceptional and extremely unusual hardship is one judge over which it lacks jurisdiction, says Rosas-Martinez. That is absolutely correct. What I'm getting at is that the particular reason why the judge thought there was no hardship with respect was because he looked at Mr. Mercado's brother as the person who signed the affidavit of support. He said, and this is again at 99 to 100 of the record, this brother has a legal obligation because he signed the affidavit of support. He is legally obligated to provide the kind of support that the petitioners currently provide. In his words, he's obligated to, quote, take the place of the Mercados. Now, the testimony showed that the Mercados provide all sorts of daily care to the parents. They help them. I thought what he was really saying, though, they were arguing under the hardship exemption, you can't deport us because we have to take care of our elderly parents. And what the IJ said is, but there are other children in the United States who can do that. That's exactly right. And what he pointed to was two children in particular. There's a sister who the testimony showed had been available to help out 14 or 16 hours per week, and he said there's the brother. Now, the testimony in the record about the brother actually showed, and this was unrefuted, that the brother would actually not be able to help care for the parents because of the demands of his job and so forth. But the judge said. Why isn't that a purely factual determination? The reason why it's not a purely factual determination is because the judge said he's legally obligated. He signed the affidavit of support. He said, quote, the law being what it is. But what if he's wrong? So what? There are other children besides the brother that the IJ referenced who are U.S. residents. Well, two answers to that. The first said can step in to take care of the elderly parents. Sure. The first answer to that, though, is that it's certainly clear that the immigration judge relied in large part on the presence of the brother. He did acknowledge there was also the one sister who could help. But I think if the court were to agree that. A daughter regularly comes into the respondent's home three times a week to care for their parents while the female respondent is at work in her own business cleaning homes. So I don't. Yes. And I'd very much like to answer the question because I think that it's an important issue, which is that the immigration judge did point to both of them, the sister and the brother-in-law. But he clearly was relying at least in part on the brother, on the brother's legal obligation. And so long as that. My question, I guess, is really a harmless error question. I guess that that's where you're at. How does he get wrong on the brother? What difference does it make on the ultimate factual conclusion? I understand the question. And I think the answer to that is that if the court agrees that the judge was wrong to assume that the legal obligation under the affidavit of support meant anything beyond simply a financial obligation, which it clearly doesn't, there is no harmless error analysis in this context. As the court made clear in cases like Azenor, for instance, if the agency decided the case, at least in part based on legally erroneous reasoning, then the proper course for this court to take is not to reweigh, not to consider, well, maybe there were other siblings who could have stepped in, but to remand to the agency, to have the agency decide again in the first instance. And I think that would certainly not be a futile exercise in this case because the agency has said in previous cases, for instance, in their precedent decision in Monreal setting out the hardship standard, that in a case where an applicant had an elderly parent and was the means of support for that elderly parent with medical problems, that that would in fact present a strong case for cancellation. I think you would have a great case if the brother was the only source of care for the elderly parents. But this is kind of getting off on a tangential issue because the factual issue that the IJ was really focusing upon was whether or not the removal of the alien family, the mother, father, and their immediate children to Mexico, would result in extreme and unusual hardship. And you're trying to extend that to a larger family, including the parents, but we have multiple siblings who are available to care for them. I'm down to about 20 seconds, so I don't want to chew up my last 20 seconds of rebuttal time. But I do think it's important, if you just look very closely at the analysis at those two pages, he's not saying there's this whole family, he's saying there's two people. And he's relying on both of them. He's saying the reason I think that there's not exceptional hardship is because both of these children are available to take the place of petitioners, to provide the kind of support that petitioners have provided. He found both of those children to be necessary part of that analysis. And the question here is, what if you take away one of those two children whose presence he relied upon? Then you're left with just the sister, just the 16 hours a week, which is far from what the record shows the parents require and the level of care that they require. I'd like to repeat. I realize that you're suggesting that we can't re-weigh, but in effect, you're asking us to re-weigh by taking into account this recital about the brothers' support. I certainly don't mean to suggest, I think it's very clear that the court can't re-weigh the issue here, that it's for the agency to decide in the first instance. But you're asking us, in effect, to get into the re-weighing business by carving out this particular observation. Are you not? No, I think I point to this particular observation, and observations like it, because I think it shows that the premise of the immigration judge's determination was that the brother would be helping to care for the parents because, in fact, he was legally obligated to do so. He is not legally obligated to do so. That was error. And the testimony in the record unrefuted, in fact, showed that he wouldn't be able to do so. And I think the suggestion is that if that legal error is corrected, how would the agency then re-weigh the factors, taking that erroneous assumption about the legal obligation out of the equation? Our questions took you over a minute and a half over time, so thank you, counsel. We'll hear from the government. May it please the Court, Charles Cantor on behalf of the Attorney General. Cantor. Your Honors, petitioners in this case admitted that they entered the United States illegally. They conceded that they're removable. They applied for cancellation of removal, a purely discretionary form of relief. They received a full and fair hearing, after which the immigration judge determined that they had not demonstrated exceptional and extremely unusual hardship to qualifying relatives. The Board affirmed this decision. This Court, from Calow to Romero-Torres to Martinez-Rosas after the real ID, to Fernandez in the context of a motion to reopen, has consistently held that this is a discretionary determination over which this Court does not have jurisdiction. Counsel, why don't you meet directly the argument that counsel makes that, sure, it's discretionary and we don't have jurisdiction over that, but where it's clear from the record that a fundamental error of law has been made. I'm not saying it has, but I'm just assuming that it has. We can go behind that. Well, in the first place, the Court doesn't need to decide that here because that issue has not been exhausted, was not exhausted before the Board. The petitioner's brief to the Board focuses solely on the sufficiency of the evidence that they presented. There's nothing that would alert the Board that there was a legal error of any kind committed by the immigration judge, except insofar as he found that they... Such as the legal error that's being asserted on this appeal. Exactly, Your Honor. And, in fact, the petitioners have been represented by counsel throughout the proceedings. If they thought that the Board should relook at this issue again, they could have filed a motion for reconsideration or a motion to reopen, and they didn't do that. Instead, they pursued this petition for review, for which this Court has no jurisdiction. Now, assuming that there was an error, and I do not concede that at all because I don't think that there's any error whatsoever, I don't think in general that... The statute is clear that the discretionary determinations committed... And when we're talking about... There's an error in reaching the discretionary determination. That is, I'm not sure that there still would be a genuine question of law because the discretionary determination involves, as this Court recognized, the weighing of a variety of factors. So we do get into the... Did that particular error factor into the ultimate discretionary decision? It's prejudice, right? If Ms. Carroll's argument is that there was a due process violation here, they didn't get a fair hearing because the immigration judge misinterpreted the legal obligation of the brother, that might establish the first prong that due process was violated, but then don't we have to look to the second prong, which is whether or not the error was prejudicial? I believe so, except that because we're in this... In the cancellation context and in any discretionary relief context, this Court's repeatedly held that there can't be... You can't violate an alien's due process in deciding whether or not to ultimately award the discretionary relief because it's discretionary. The alien has no liberty or property interest in the relief. This Court held that in Tovar Landon and most recently, I believe May 22nd, in the Sandoval Luna case. So we wouldn't get to the prejudice prong. You wouldn't get past the first one. That's correct. Yes, Your Honor. I think that the statute is clear enough that the discretionary determinations by the Attorney General or his designees are not subject to judicial review, and I think that this Court's made clear that you can't wrap a... discretionary determination in either an error of law or a constitutional claim. Just calling it so doesn't make it so. But if I understood Ms. Carroll's argument correctly, the due process violation is the failure to afford a fair hearing to the aliens because the immigration judge misinterpreted the brother's legal obligation to provide support to the parents and therefore wrongfully determined the extreme hardship determination on an assumption that the law does not support. I think that fairly characterizes her argument. And again, as I understand the argument, Your Honor, I think that there could not be a due process violation because there's no liberty or property interest at stake. The interest is in a fair hearing, isn't it? Isn't that the constitutional right that the aliens are challenging here? They were deprived of a fair hearing. That's the basis of their due process challenge. Not that they have a liberty interest in a determination that there is extreme and unusual hardship. The problem I have with that... Or excuse me, that they're entitled to cancellation of removal. Right. The problem I have with that characterization, Your Honor, is that they're alleging that they're fair hearing. Where does the violation take place? It's not any part that they weren't permitted to present evidence or that there was some bias. It's in the actual decision by the immigration judge is where the alleged due process error is occurring. It's in the process by which the immigration judge actually reaches the discretionary decision. So I think it's a bit of a stretch to say that it's actually a denial of a fair hearing as far as due process is concerned. Mr. Cantor, as I understand your argument, you're arguing that the IJ made a discretionary determination as to the hardships. We are precluded from reviewing that. Our own case law says we cannot review that. The other claim is that there was this lack of a due process by a fair hearing or whatever. That was not raised to the BIA, and therefore we lack jurisdiction to consider that claim. Those being the only claims made, you should win. Is that your argument? That's exactly my argument, Your Honor, yes. This court does not have jurisdiction over this case, and the final contention that the petitioners raise is that somehow in order to avoid a constitutional problem, the court should interpret 1252A2B to permit review of discretionary determinations when they implicate certain fundamental constitutional rights. I think that that is – the constitutional avoidance doctrine does not permit the court to rewrite a statute. It's only – it allows the court to choose between two fairly possible interpretations. And the fact is that every denial – cancellation requires qualifying relatives. So to be eligible for cancellation, a denial will – requires some family unity, and a denial will necessarily implicate that. So I think that that would be entirely contrary to 1252A2B. Thank you, Counsel. Anything further? No, Your Honor. Thank you. Thank you, Counsel. The case just argued will be submitted for decision, and we will hear argument in Mancera-Luna v. Mukasey. Let me just say, Ms. Carroll, thank you for taking the appointment. Oh, thank you, Your Honor.
judges: Thompson, O'scannlain, Tallman